1 | The Honorable Richard A. Jones

2

3

4

5

6

7

8

9 | UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
10 | AT SEATTLE

11 | UNITED STATES OF AMERICA,          )
                                                          )       NO.   CR09-00402RAJ
12 |             Plaintiff,                          )
                                                          )
13 |       v.                                          )      UNITED STATES' SENTENCING
                                                          )      MEMORANDUM AND MOTION
14 | CHRISTOPHER DICUGNO,           )      PURSUANT TO USSG 5K1.1
                                                          )
15 |             Defendant.                        )
_____ )

16

17

18 | **A.       INTRODUCTION**

19 |       The United States of America, by and through Jenny A. Durkan, United States

20 | Attorney for the Western District of Washington, and Nicholas W. Brown and Aravind

21 | Swamination, Assistant United States Attorneys for said District, submits this sentencing

22 | memorandum.

23 |       Sentencing is scheduled for December 2, 2010.

24 |       On August 25, 2010, the Defendant entered a plea of guilty to the following

25 | charge: Conspiracy to Commit Wire Fraud, as charged in Count 1 of the Indictment, in

26 | violation of Title 18, United States Code, Sections 1349 and 2.  As part of the Plea

27 | Agreement, the United States Attorney's Office for the Western District of Washington

28 | agreed to move to dismiss the remaining counts in the Indictment at the time of

U.S. SENTENCING MEMO - 1
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   sentencing.

2        The offense charged in Count 1 carries a maximum penalty of:  imprisonment for

3   up to thirty (30) years;  fine of up to two hundred and fifty thousand dollars

4   ($250,000.00); a period of supervision following release from prison of up to three (3)

5   years; and a one hundred dollar ($100.00) special assessment.

6   **B.      THE OFFENSE CONDUCT**

7        This Court presided over a week long trial of co-defendant Mark Ashmore, during

8   which the conspiracy, and the co-conspirators various roles, were gone into in some

9   depth.  Mr. DiCugno, testified during the trial and the Court is familiar with the role he

10  played in helping to execute this fraud.

11       The scheme was a classic "credit investor" scam that used the personal and

12  financial information of others to fraudulently gain control of various properties.  Mr.

13  Ashmore would identify residential real property for sale.  He would then contact the

14  seller of the subject properties, and would generally offer to purchase the property at well

15  above the asking price.  As part of the propose sale agreement, the seller of the subject

16  properties sign an "upgrade agreement," assigning any proceeds over the original asking

17  price to a company owned or controlled by Mr. Ashmore.

18       Mr. Ashmore and his co-conspirators would recruit and pay individuals to pose as

19  buyers ("straw buyers") for the subject properties, often promising to pay them substantial

20  sums of money.  In return for their fee, the straw buyers would allow their identities and

21  credit information to be used in mortgage loan applications.  The applications were

22  submitted to financial institutions and mortgage lenders, and represented the straw buyer

23  as the true buyer of the selected properties, and the individual responsible for the loan.

24  The money obtained via the fraudulent loans was the diverted to Mr. Ashmore and then

25  on to the other conspirators, and some was used to secure residential real property for

26  Defendant's and other members of the conspiracy's use.

27       From approximately October 2004, until December 2007, the Defendant worked at

28  Pierce Commercial Bank in Puyallup, Washington.  During the majority of his time with

U.S. SENTENCING MEMO - 2
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

1   Pierce, the Defendant was employed as a loan officer, and was responsible for ensuring

2   that an individual applying for a mortgage loan met the requirements of the lender's loan

3   product.

4         Beginning in late 2005 and early 2006, the Defendant was introduced to Mr.

5   Ashmore through a business associate named Joe Woodruff.  Shortly thereafter, the

6   Defendant began making hard money loans to Mr. Ashmore to be used in his real estate

7   investments.  Approximately a year later, the Defendant began processing loans at Pierce

8   Commercial Bank associated with co-defendant Mark Ashmore, and others associated

9   with Mr. Ashmore's business entity, Equity Solutions Northwest, with the hopes of

10   getting a return on the loans he made to Mr. Ashmore and Mr. Woodruff.  During this

11   time, the Defendant assisted Mr. Ashmore and others in purchasing homes for straw

12   buyers, using fraudulent information to obtain the financing for the loans, knowing that

13   the buyers were unable to legitimately obtain financing to acquire these properties using

14   their true financial and credit information.

15        The Defendant was personally involved in five specific property transactions

16   associated with this scheme.  The total loss amounts related to these properties are as

17   follows:

18        •     170th Avenue NE, Woodinville, WA - $192,000

19        •     9641 S 243rd St., Kent, WA - $75,000

20        •     12031 NE 70th St., Kirkland, WA - $265,000

21        •     1757 N 88th St., Kirkland, WA - $312,000

22        •     9303 167th St. Ct. E, Puyallup, WA - $318,867

23        This fraudulent scheme was orchestrated to purchase over forty different

24   residential properties in Washington and Nevada.  A majority of the properties were often

25   "flipped" in subsequent transactions, often leading to falsely inflated property values.

26   This means that members of the conspiracy would recruit another straw buyer to purchase

27   the same real property, typically at a significantly inflated price over the prior purchase

28   agreement between a member of the conspiracy and the original seller.

U.S. SENTENCING MEMO - 3
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    The conspirators would also often make, or cause others to make, the payments on

2    the mortgage loans obtained as part of the conspiracy, in an attempt to maintain the loans

3    until the properties could be sold again, oftentimes in another flip to another straw buyer.

4    However, in the end, the conspirators ultimately failed to make payments on the loans,

5    and the properties generally went into foreclosure or were sold in short sales, causing the

6    financial institutions and mortgage lenders to suffer substantial losses.

7    **C.      Base Offense Level and Loss Amount Calculations**

8    The Presentence Report accurately summarizes the offense conduct in this case

9    and correctly calculates the offense level, criminal history category, and resulting

10   advisory Sentencing Guidelines range.  The Defendant's base offense level is 7, pursuant

11   to U.S.S.G. § 2B1.1.

12   A 16-level upward adjustment based on loss amount also applies, pursuant to

13   U.S.S.G. § 2B1.1(b)(1)(I), as the loss amount is greater than $1,000,000, but less than

14   $2,500,000.  The government calculates the actual total loss associated to the Defendant

15   as $1,162,867.  To arrive at this figure, a Financial Analyst at the FBI and the case agent

16   SA Hilary Salee, took the gross loan amounts for the various properties involved in the

17   scheme, and examined the recorded documents pertaining to the subsequent sales of these

18   properties.  However, the gross amount must be reduced by "the amount the victim has

19   recovered at the time of the sentencing from disposition of the collateral, or if the

20   collateral has not been disposed of by that time, the fair market value of the collateral at

21   the time of sentencing."  Application Note 3(E)(ii).  In addition, for the purposes of the

22   Guidelines calculation, the loss amount is the greater of the actual or intended loss,

23   whichever is higher.  Application Note 3(C).

24   The Defendant makes a specific objection to the loss calculation for the property

25   located at 170th Avenue NE in Woodinville, Washington.  This property was purchased

26   by S.S. on January 12, 2007 for $650,000, in a loan transaction financed by Pierce

27   Commercial Bank.  As a result of the fraud, the property went into foreclosure and was

28   sold on November 28, 2007, to Deutsche Bank for $553,500.  Deutsche subsequently

U.S. SENTENCING MEMO - 4
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  resold the residence in a foreclosure sale on March 8, 2010, for $458,000.  Thus, while

2  the actual loss to Pierce Commercial Bank was $96,500, the pecuniary harm that was

3  intended from the commission of the offense is appropriately calculated at $192,000.

4  This figure is the appropriate figure for the Court to use to determine the loss amount

5  pursuant to U.S.S.G. § 2B1.1(b)(1).  However, even if the Court chose to apply the lessor

6  $96,500 figure for this specific property, the total loss amount would still be greater than

7  the $1,000,000 baseline for a 16-level upward adjustment pursuant to 2B1.1(b)(1)(I).

8         While the defense does not advance any further specific objections to the loss

9  calculations, they do assert claims of fraud by others involved in loan transactions relating

10  to the 170th Avenue and South 243rd St. properties.  First and foremost, the defense bears

11  the burden of persuasion on this issue.  In addition, this argument goes to materiality, and

12  as such it appears to be legally foreclosed by the guilty plea of the Defendant.  Mr.

13  DiCugno has admitted making materially false representations to induce the lenders to

14  make the loans, and he cannot now complain for sentencing purposes that the

15  misrepresentations were not *really* material, because others may have been party or

16  otherwise complicit to the fraud.  In any event, none of the claims made by the Defendant

17  relating to the alleged actions of others affect the intended loss amounts attributable to he

18  and his co-defendants.

19  **D.      Total Offense Level and Advisory Guidelines Range**

20         Pursuant to the plea agreement, the government agreed that it would not seek an

21  adjustment based upon the role the Defendant played in committing the offense pursuant

22  to U.S.S.G. §§ 3B1.1.  From the government's perspective, the Defendant's role in this

23  case is neither aggravating or mitigating and therefore no role adjustment is appropriate.

24  In some ways Mr. DiCugno was less involved in the execution of the charged conspiracy

25  than both Mr. Reimer and Mr. Nguyen.  He was not involved as a straw buyer himself nor

26  did he recruit others to participate in the scheme.  On the other hand, as an employee of

27  the institution that financed a number of the fraudulent loans, Mr. DiCugno played an

28  important role in helping to execute this scheme.  Moreover, from the government's

U.S. SENTENCING MEMO - 5
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  perspective Mr. DiCugno was far more knowledgeable and sophisticated in the real estate

2  industry than these two co-defendants.  In addition, as a bank employee, he bore

3  additional responsibilities to engage in honest and legitimate transactions.  While an

4  enhancement pursuant to U.S.S.G. § 3B1.3 may not apply, Mr. DiCugno is deserving of

5  greater scrutiny due to his position as an insider of the financial institution he victimized.

6      The parties are free to argue the application of any other provisions of the United

7  States Sentencing Guidelines, but the government does not believe any additional

8  provisions apply.

9      The Presentence Report correctly accounts for deductions to the Base Offense

10 Level for acceptance of responsibility.  The Defendant has assisted the United States by

11 timely notifying the authorities of Defendant's intention to plead guilty, thereby

12 permitting the United States to avoid preparing for trial and permitting the Court to

13 allocate its resources efficiently.  The Defendant's Total Offense Level should be

14 decreased by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b).

15     The Total Offense Level is therefore a level 20.  The government agrees that the

16 defendant has no prior criminal history and is therefore in a criminal history category of I.

17 The corresponding guideline range is 33-41 months.

18 **E.    COOPERATION**.

19     The United States respectfully requests the Court depart from the United States

20 Sentencing Guidelines (USSG) range, pursuant to Section 5K1.1, due to the substantial

21 assistance provided by the Defendant.  The terms of the plea agreement contained a

22 cooperation provision.  Specifically, Mr. DiCugno agreed that he would cooperate

23 completely and truthfully with law enforcement authorities in the investigation and

24 prosecution of other individuals involved in criminal activity.  Such cooperation would

25 include, but not be limited to, complete and truthful statements to law enforcement

26 officers, as well as complete and truthful testimony, if called as a witness before a grand

27 jury, or at any state or federal trial, retrial, or other judicial proceedings.  The Defendant

28 acknowledged that his obligation to cooperate would continue after he entered a guilty

U.S. SENTENCING MEMO - 6
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   plea and sentence had been imposed, no matter what sentence he received, and the

2   Defendant's failure to continue his cooperation would constitute a breach of the plea

3   agreement.

4          The Defendant has provided substantial assistance to the government in both the

5   instant matter and the ongoing investigation of some of the former employees of Pierce

6   Commercial Bank.  Prior to entering a plea of guilty to the conspiracy charged in Count 1,

7   he proffered to the government about the charged offenses.  During the proffer, he

8   admitted to his role in the offense and assisted the government in preparing for trial

9   against his co-defendant Mr. Ashmore.  He ultimately testified at trial, and the Court of

10  course had an opportunity to evaluate his testimony and its impact.  In the government's

11  estimation, Mr. DiCugno's testimony was of substantial value in helping to secure Mr.

12  Ashmore's conviction.  In addition, he has provided important information in the Pierce

13  bank investigation.  Although Mr. DiCugno's assistance did not in any way "*lead* to the

14  exposure of" the potential fraud committed by some of the bank's former employees, he

15  has readily cooperated and provided helpful information that was not otherwise available.

16         While ultimately substantial, the Defendant's cooperation in the Ashmore

17  investigation was not as easily forthcoming as his two co-defendants, Mr. Reimer and Mr.

18  Nguyen.  The defense notes two proffer sessions with the government in January and

19  March 2008.  However, in both of these interviews, the defendant failed to provide

20  complete information to the government about the extent of his involvement.  Indeed,

21  during at least the first proffer session, the Defendant denied any wrongdoing and was not

22  forthcoming.  His initial involvement with the government was in fact not cooperative,

23  but counterproductive.  This can be contrasted with the cooperation of his two co-

24  defendants, who both readily admitted their involvement in the fraudulent scheme when

25  contacted by law enforcement.

26  F.     **RESTITUTION**.

27         As part of the plea agreement, Mr. DiCugno agreed to make restitution to any

28  financial institution harmed by his participation in the charged conspiracy, in an amount

U.S. SENTENCING MEMO - 7
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    to be determined at the time of sentencing.  The government calculates the Defendant's

2    restitution amount to be $1,067,367.  His restitution obligation shall be joint and several

3    with the three co-defendants.

4    **G.      RECOMMENDATION AND JUSTIFICATION**.

5          The government respectfully recommends a custodial sentence of 18 months, to be

6    followed by three years of supervised release.  As set forth in the Supreme Court's

7    decision in *United States v. Booker*, 453 U.S. 220, 246 (2005), this Court is required to

8    consider the sentencing range calculated under the United States Sentencing Guidelines,

9    together with the other factors set forth in Title 18, United States Code, Section 3553(a),

10   including: (1) the nature and circumstances of the offense and the history and

11   characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the

12   seriousness of the offense, to promote respect for the law, and to provide just punishment

13   for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the

14   public from further crimes of the defendant, and (d) to provide the defendant with

15   educational and vocational training, medical care, or other correctional treatment in the

16   most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and

17   the sentencing range established for the offense as set forth in the guidelines; (5) any

18   pertinent policy statement; (6) the need to avoid unwarranted sentence disparity among

19   defendants involved in similar conduct who have similar records; (7) the need to provide

20   restitution to victims.

21         The nature and circumstances of Defendant's offense, as well as his personal

22   history and characteristics, support a 18-month term of imprisonment.  First and foremost,

23   the offense the Defendant participated in was an incredibly serious crime.  The impact of

24   this credit investor scheme on the mortgage lending industry cannot be overstated.  Many

25   of the lenders involved in this particular scheme have gone out of business.  This includes

26   Pierce Commercial Bank in Tacoma, Washington, which was closed on November 5,

27   2010.

28         Moreover, the Defendant's position as a bank employee during his participation in

U.S. SENTENCING MEMO - 8
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  this scheme deserves special scrutiny.  While there appears to have been numerous others

2  at Pierce bank involved in similar fraud, the Defendant was a large part of the overall

3  problem.  As the defense notes, he was clearly intelligent enough to have known better

4  than to willingly participate in such a scheme.  Instead, to pursue his own greed, he joined

5  the conspiracy perpetrated by Mr. Ashmore and others with hopes to gain financially.

6      The government's recommended sentence is well below the recommended

7  guideline range, largely due to the Defendant's ultimate cooperation against Mr. Ashmore

8  and his ongoing assistance in the Pierce investigation.  In addition, he appears to have led

9  an honest and service-filled life prior to becoming involved in this scheme.  Given his

10  lack of any substantial criminal history, the government believes that he is unlikely to re-

11  offend.  On balance, the government believes that a sentence of 18 months is sufficient,

12  but not greater than necessary, to satisfy the goals of sentencing.

13  **H.     CONCLUSION**

14      For the reasons set forth above, the government respectfully recommends a

15  sentence of 18 months, to be followed by three years of supervised release.

16      Respectfully submitted this 24th day of November, 2010.

17                          Respectfully submitted,

18                          JENNY A. DURKAN
                            United States Attorney
19
                              /s Nicholas Brown
20                          NICOLAS BROWN
                            ARAVIND SWAMINATHAN
21                          Assistant United States Attorneys
                            United States Attorney's Office
22                          700 Stewart Street, Ste. 5220
                            Seattle, Washington 98101
23                          Facsimile: 206-553-0755
                            Phone: 206-553-1565
24                          E-mail: nicholas.brown@usdoj.gov

25

26

27

28

U.S. SENTENCING MEMO - 9
(U.S. v. Ashmore, et. al., CR09-0402RAJ)